NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name:  05a0399n.06

Filed:  May 13, 2005

03-4381

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| EARL HIGGS, | ) | |
| | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| AUTOMOTIVE  WARRANTY | ) | STATES DISTRICT COURT FOR |
| CORPORATION  OF  AMERICA, | ) | THE  SOUTHERN  DISTRICT  OF |
| LARRY  MYERS,  GENA MAY, and | ) | OHIO |
| CLAUDE THOMPSON | ) | |
| | ) | |
|     Defendants-Appellants. | ) | |
| | ) | |

Before: DAUGHTREY, COOK, and FARRIS,[*] Circuit Judges.

FARRIS, Circuit Judge.  Defendants appeal from the denial of a stay of the proceedings pending arbitration.  The district court concluded that the arbitration clause in the agreement between the parties was unenforceable.  We reverse and remand.

---

[*] The Hon. Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

**FACTUAL AND PROCEDURAL BACKGROUND**

Several days after Earl Higgs bought a used 1995 Mercury Grand Marquis automobile, he received an advertisement by mail from Automotive Warranty Corporation of America soliciting the purchase of an extended warranty on the vehicle. He completed a "Warranty Group Registration Form" contained in the solicitation and returned it to AWCA along with a personal check for $148.50. The registration form contained the following provision: "I UNDERSTAND THE CONTRACT IS NOT IN FORCE UNTIL THIS APPLICATION HAS BEEN ACCEPTED AND THE CONTRACT ACTUALLY ISSUED. ALLOW THREE WEEKS FOR THE COVERAGE TO BECOME EFFECTIVE. ATTEST THAT ALL INFORMATION IS TRUE AND ACCURATE." The registration form and his check were the only documents that Higgs signed in connection with the purchase of the warranty. Subsequently, Higgs received by mail a "Limited Warranty Service Contract."

The service contract, which Higgs was not required to sign, contained an arbitration clause. The clause provided:

By accepting this contract you agree to the following:

Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association,

2

and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof, or with the Better Business Bureau. The parties agree that there shall be no further redress or appeal of the arbitration award. The parties also agree that the costs of the arbitration, excluding attorney's fees, will be paid by the party against whom the award is rendered.

The service contract also contained a provision captioned "UNCONDITIONAL GUARANTEE," which stated: "After receiving 'Your' Warranty, if you're not completely satisfied, return it within 10 days and we'll give you a full money back guarantee." Higgs retained the warranty for more than 10 days.

The service contract provided a one-year warranty for Higgs' vehicle. Some months after receiving the contract, Higgs replaced the upper ball joint in his vehicle's front suspension. When he submitted a claim to AWCA for this repair, it was denied. Consequently, Higgs brought individual and class action claims against AWCA, Larry Myers (AWCA's president and chief executive officer), Gena May (AWCA's director of customer relations), and Claude Thompson (AWCA's executive vice president and chief operating officer) in state court, alleging that the defendants do business through unfair, deceptive, corrupt, and/or fraudulent practices in the solicitation and sale of automobile repair warranty coverage for newly-purchased used cars. The defendants removed the case to federal court under both federal question and diversity jurisdiction.

After removal, the defendants asked the district court to (1) enforce the arbitration clause included in the service contract and (2) to stay the proceedings under the FAA, 9 U.S.C. § 3, and the Ohio Arbitration Act, O.R.C. § 2711.02. The district judge denied the motion, writing that "the arbitration clause in the Limited Warranty Service Agreement in [sic] unenforceable because there was no meeting of the minds as to its inclusion." Higgs v. The Warranty Group, No. C2-02-1092, 2003 WL 23335930, at * 4 (S.D. Ohio. Sept. 25, 2003). The district court concluded that the arbitration provision was therefore not a term of the service contract. The defendants took an immediate appeal, as is their right under the FAA. See 9 U.S.C. § 16(a)(1)(A).

## DISCUSSION

A written agreement to arbitrate disputes arising out of a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. To enforce this mandate, the FAA "provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." Javitch v. First Union Securities, Inc., 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3 & 4). The denial of a stay pending arbitration is reviewed de novo.

4

The question is: Did Higgs agree to arbitrate disputes arising from his purchase of AWCA's extended warranty? In the absence of a valid agreement to arbitrate, Higgs was not required to do so. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration."). Here, there is no dispute that the document labeled "Limited Warranty Service Contract" contains an arbitration clause. There is sharp dispute, however, as to whether this clause is enforceable. Higgs contends he did not agree to the provision. He notes that the arbitration provision was contained within the "Limited Warranty Service Contract," which was provided to him after he signed the registration form and after he forwarded the form along with a personal check for payment. The district court, applying Ohio law, concluded that the contract was formed when Higgs paid for the warranty; as a result, only terms known to Higgs at that moment were part of the contract, and the arbitration clause articulated in the service contract is of no force or effect.

The service contract is an "accept-or-return" type of contract. Higgs received a solicitation and application by mail. He completed the application, which expressly stated that no contract was in force until the application had been accepted by AWCA and the contract was issued. Higgs forwarded the application along with payment to

5

AWCA, and in return, he received a Limited Warranty Service Contract, which contained the terms of the agreement, including an arbitration clause and an unconditional full money back guarantee if he returned the warranty within ten days. Higgs retained the warranty past the ten days.

Under similar facts, the Seventh Circuit enforced an arbitration clause found in a "pay now, terms later" type of customer agreement. See, e.g., Hill v. Gateway 2000, 105 F.3d 1147 (7th Cir. 1997). In Hill, the consumer purchased a computer over the telephone and was sent the computer and contract terms, including the arbitration clause, at the same time. The contract provided that the consumer could return the computer if dissatisfied with the terms of the agreement within 30 days and receive a full refund. The court held that the consumer assented to the contract, including the arbitration provision, by keeping the computer for more than 30 days. The "accept-or-return" mechanism to contract formation has been enforced by courts, including in contexts involving the sale of products and services by mail and telephone, software licensing and sales, mobile telephone service agreements, satellite television agreements, credit card agreements, and bank account agreements. See, e.g., Hill, 105 F.3d at 1149; O'Quin v. Verizon Wireless, 256 F. Supp. 2d 512 (M.D. La. 2003); Bischoff v. DirecTV, Inc., 180 F. Supp. 2d 1097 (C.D. Cal. 2002); Bank One v. Coates, 125 F. Supp. 2d 819 (S.D. Miss. 2001); Stiles v. Home Cable

6

Concepts, 994 F. Supp. 1410 (M.D. Ala. 1998). The "accept-or-reject" type of agreement "relies on the proposition that a contract is formed not at the time of purchase or earlier but rather when the purchaser either rejects by seeking a refund or assents by not doing so within a specified time, providing the purchaser with an opportunity to review the proposed terms." Register.Com, Inc. v. Verio, Inc., 356 F.3d 393, 431 n.43 (2d Cir. 2004).

Although Ohio courts have not directly addressed the issue, one intermediate appellate court decision in Ohio suggests that the "approve-or-reject" mechanism to contract formation would be permissible under state contract law. In Reedy v. Cincinnati Bengals, Inc., 758 N.E.2d 678 (Ohio Ct. App., 2001), the Cincinnati Bengals offered season ticket holders the opportunity to buy a guaranteed seat in a specific area of the team's new football stadium. The solicitation included a brochure with a diagram of the arena seating areas, corresponding prices, and detailed "Charter Ownership Rules & Regulations," which required that applicants pay one-third of the total price up front and explained that applicants would receive a contract after making the initial payment. Applicants were required to sign and return the contract within thirty days of receipt or lose their guaranteed seat, and they could not receive a refund of their initial payment. The "Rules & Regulations" did not contain the arbitration clause that was included in the contract the applicants subsequently received, and the

court held that the parties had not agreed to the arbitration provision because the parties agreed only to the terms contained in the "Rules & Regulations." The court in Reedy refused to recognize the contract as an "approve-or-reject" type of agreement because the contract terms, including an arbitration clause, did not permit the buyer to reject the terms with impunity after the buyer made an initial payment.

The plain language of the service contract provided Higgs with an opportunity to revoke the agreement and receive a full refund for the warranty he purchased – an unconditional "full money back guarantee." This unconditional guarantee is a firm commitment from AWCA to refund all of Higgs' money without restriction if he returned the warranty within 10 days. Keeping the warranty past ten days was sufficient to demonstrate agreement to the terms of the contract, including the arbitration clause.[2]

A "meeting of the minds" existed as to the arbitration clause. Higgs, while

---

[2] A case relied on by the district court is distinguishable from the instant case. In Nationwide Mut. Ins. Co. v. Marsh, 472 N.E.2d 1061,1062-63 (1984), the court held that an arbitration clause added to an insurance policy after the premium was paid and coverage began was unenforceable because there was no "meeting of the minds" as to its inclusion. In that case, however, the insurance policy endorsement, which contained the arbitration clause, was first communicated to the insured by the insurer after the insured purchased the policy and after the insured sought coverage for an accident. Significantly, the contract at issue in Nationwide did not involve an "approve-or-return" mechanism or include any type of unconditional guarantee as part of the contract formation process.

completing his application, was instructed that a service contract was forthcoming. Once he received the agreement, he was given the opportunity to reject its terms and obtain a full refund. Instead, he kept the warranty, thereby assenting to its terms, including the arbitration provision.

On remand, the district court should consider several issues, including (1) the scope of the arbitration agreement, (2) whether Congress intended arbitration to govern the federal claims asserted, and (3) whether to stay the proceedings pending arbitration if only some of the claims are arbitrable. See Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000).

REVERSED AND REMANDED.

MARTHA CRAIG DAUGHTREY, Circuit Judge, dissenting. In holding that the plaintiff is bound by the arbitration clause that was contained in the warranty but not in the contract to purchase the warranty, the majority relies in part on the opinion of the Ohio Court of Appeals in <u>Reedy v. Cincinnati Bengals, Inc.</u>, 143 Ohio App.3d 516, 758 N.E.2d 678 (2001), interpreting that decision to "suggest[] that an 'approve-or-reject' mechanism would be permissible under [Ohio] state contract law." But the <u>Reedy</u> court declined to enforce the arbitration clause in that case, because – in the words of the majority here – it was not presented in a manner that "permit[ted] the buyer to reject the terms with impunity after the buyer made an initial payment." <u>See</u> <u>Reedy</u>, 758 N.E.2d at 686; <u>see</u> <u>also</u> <u>Dunkelman v. Cincinnati Bengals, Inc.</u>, 158 Ohio App.3d 604, 612, 821 N.E.2d 198 (2004) ("For a subsequent arbitration term to have become enforceable by the payment of the accompanying invoice, the [buyer] would have had to retain the contractual option to reject the terms with impunity without having to forfeit the substantial initial payments.")

In this case, I would hold likewise that the buyer lacked the ability to reject *with impunity*, if for no other reason than the ambiguous language in the warranty that he received. Moreover, as the district court noted:

[T]he Unconditional Guarantee at issue in the Service Contract did not

10

provide Plaintiff with an "opt-out" option. In fact, reading it by its plain terms, this provision in the contract does not provide Plaintiff with an opt-out or a refund: it simply advised Plaintiff that he could return the Warranty within ten days to obtain a "money back gurantee." Plaintiff did not have an option to revoke the contract and receive a full refund after reviewing the terms of the agreement.

The district court thus concluded, as has the Ohio Court of Appeals in <u>Reedy</u> and <u>Dunkelman</u>, that the arbitration clause in the warranty "i[s] unenforceable because there was no meeting of the minds as to its inclusion."

I agree, and I therefore respectfully dissent from the majority's decision to remand this case to the district court to enforce the arbitration provision.