**Dolores STACHURSKI, et. al., Plaintiffs**

v.

**DIRECTV, INC., Defendant.**

**Case No.: 1:08 CV 2850.**

United States District Court, N.D. Ohio, Eastern Division.

July 13, 2009.

---

Daniel C. Bryden, Deanna D. Dailey, Sprenger & Lang, Minneapolis, MN, Garrett W. Wotkyns, Joshua G. Konecky, Todd M. Schneider, Schneider Wallace Cottrell Brayton Konecky, Ingrid M. Evans, Waters Krauss, San Francisco, CA, William M. Sweetnam, Sprenger & Lang, Chicago, IL, Jack Landskroner, Landskroner Grieco Madden, Cleveland, OH, for Plaintiffs.

Melissa D. Ingalls, Robyn E. Bladow, Kirkland & Ellis, Los Angeles, CA, Fritz E. Berckmueller, Calfee, Halter & Griswold, Cleveland, OH, James F. Lang, Calfee, Halter & Griswold, Columbus, OH, for Defendant.

## *ORDER*

SOLOMON OLIVER, JR., District Judge.

DirecTV, Inc. ("DirecTV" or "Defendant") is a California corporation that provides direct-to-home satellite television services to subscribers nationwide, including Geagua County, Ohio. (Compl. ¶¶ 5–6, ECF No. 1.) DirecTV is the largest direct-to-home satellite television provider in the United States. (*Id.* ¶ 5.) Plaintiffs Dolores Stachurski ("Stachurski") and Robert Kravos, Jr. ("Kravos") (collectively, "Plaintiffs"), who are residents of Chardon, Ohio, were DirecTV customers from approximately March 2, 2004, through July 2008. (*Id.* ¶ 4.)

On December 4, 2008, Plaintiffs filed a Class Action Complaint against Defendant on behalf of themselves, current DirecTV subscribers, and former DirecTV subscribers that incurred DirecTV's early cancellation fee, alleging violations of the Ohio

Deceptive Trade Practices Act ("ODT-PA"), the Ohio Consumer Sales Practices Act ("CSPA"), unjust enrichment, and liquidated damages. Pending before the court are the following Motions: (1) Defendant's Motion to Dismiss or Stay Proceedings Pending Arbitration and to Compel Arbitration, or, in the Alternative, to Dismiss Plaintiffs' Claims for Declaratory Judgment and Breach of Contract ("Def.'s Mot. Compel," ECF No. 17); and (2) Plaintiffs' Motion to Appoint Interim Co-Lead Counsel ("Pls.' Mot. Appoint Counsel," ECF No. 28). For the following reasons, the court grants in part and denies in part Defendant's Motion to Dismiss Proceedings and to Compel Arbitration, or, in the Alternative, to Dismiss Plaintiffs' Claims for Declaratory Judgment and Breach of Contract and denies Plaintiffs' Motion to Appoint Interim Co-Lead Counsel as moot.

## I. FACTS

### A. Plaintiffs' Dealings with Defendant

On January 20, 2004, Plaintiffs called DirecTV's toll free number and ordered DirecTV services. (Compl. ¶ 13.) On March 2, 2004, a DirecTV installer set up service at Plaintiffs' home. (Id.) According to Defendant, the installer, who is usually not a DirecTV employee, provides subscribers with Defendant's "Lease Addendum," which contains its term commitment and early termination fee policy on the back of the form, when its equipment is installed, when malfunctioning equipment leased from Defendant is replaced, and when subscribers change their service. (Compl. ¶¶ 10, 21.) Plaintiffs allege that the installers are not instructed or authorized to discuss or call attention to the terms on this form. (Id. ¶ 21.)

The top of the Lease Addendum provides in capital letters that it:

Must be read together with the DirecTV Customer Agreement (a copy of which is provided to you with your first bill and is available at www.directv.com) for all of the terms and conditions regarding the provision of the services and your right to use the DirecTV equipment.

(Id. ¶ 22.)

In early January 2008, Plaintiffs experienced a technical problem with their DirecTV service. (Id. ¶ 14.) After a technician was unable to correct the issue, Plaintiffs placed an order for new, upgraded receivers with no charge by Defendant. (Valerie McCarthy Decl. ¶ 7, ECF No. 19.) Defendant contends that on or about February 11, 2008, it sent an order confirmation letter regarding the new receivers to Plaintiffs, which explained that the order required Plaintiffs to enter into a new term commitment and that an early cancellation fee may be incurred if this commitment is not fulfilled. (McCarthy Decl. ¶ 7; Ex. E.) Almost one month later, Plaintiffs activated the new receivers. (Id. ¶ 7.) However, the problem continued and Plaintiffs subsequently cancelled their DirecTV service. (Compl. ¶ 15.) As a result of their cancellation, Plaintiffs were charged an early cancellation fee of $280. (Id. ¶ 16.)

After learning of this cancellation fee, Plaintiff Kravos contacted Defendant about the fee and was told that he and Plaintiff Stachurski agreed to a two-year contract when they ordered the new receivers. (Id. ¶ 17.) Plaintiff Kravos requested that Defendant send him a copy of the alleged signed agreement, but instead received a pamphlet containing Defendant's Customer Agreement that Plaintiff Kravos had not seen previously. (Id. ¶ 19.) Plaintiffs contend that Defendant did not inform them at any time that they were renewing their contract when they ordered the new receivers. (Id. ¶ 18.) Also, Plaintiffs never signed or read any

document that informed them of the contract or the early cancellation fee. (*Id.*)

Defendant contends that Plaintiffs accepted the terms and conditions of the Customer Agreement by not cancelling its service after receiving the agreement. (Def.'s Mem. Supp. Mot. to Compel at 1, ECF No. 18.) The first paragraph of the Customer Agreement provides in bolded, capitalized letters: "If you do not accept these terms, please notify us immediately and we will cancel your service. If you instead decide to receive our service, it will mean that you accept these terms and accordingly, they will be legally binding on you." (McCarthy Decl. Ex. A.) Plaintiffs received the 2001 Customer Agreement with their first billing statement on or about January 21, 2004. (*Id.* ¶ 5; Ex. A.) After receiving this copy of the Customer Agreement, Plaintiffs did not contact Defendant to dispute any of the terms or conditions or cancel Defendant's services. (*Id.*)

The Customer Agreement further provides that the agreement may be updated with subsequent Customer Agreements and that Plaintiffs would accept the updated terms by continuing to accept service. (*Id.* § 4.) Plaintiffs received updated Customer Agreements in October 2004 and May 2006 with their October 21, 2004 and May 21, 2006 billing statements. (*Id.* ¶ 6; Ex. B; Ex. C.) In May 2007, Plaintiffs received an updated Customer Agreement with their billing statement, which explained in bolded, capitalized letters how Plaintiffs could accept the updated agreement:

> This document describes the terms and conditions of your receipt and payment of DirecTV service and is subject to arbitration (Section 9). If you do not accept these terms, please notify us immediately and we will cancel your service. If you instead decide to receive our service, it will mean that you accept

> these terms and they will be legally binding.

(*Id.* Ex. D.) After receiving the 2004, 2006 and 2007 Customer Agreements, Plaintiffs did not dispute any of the terms or conditions or cancel Defendant's services. (*Id.* ¶ 6.)

The original Customer Agreement and updated Customer Agreements all contain similar arbitration clauses. (*Id.* Ex. B, § 9; Ex. C, § 9; Ex. D, § 9.) The 2001 Customer Agreement arbitration clause states:

> [Y]ou and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows ... [I]f we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration ... **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL** ... If you initiate the arbitration, you agree to pay a fee of $125 ... We agree to pay any additional fee or deposit ... in excess of your filing fee.

(*Id.* Ex. A, § 8.) The 2007 Customer Agreement also provides:

> Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity ... If, however, the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable.

(*Id.* Ex. D, § 9(c).) Section 10(b) of this Customer Agreement further provides that "Section 9 [the arbitration clause] shall be governed by the Federal Arbitration Act."

## B. The Instant Suit

Plaintiffs filed a Class Action Complaint before this court on behalf of themselves and all current DirecTV subscribers and past DirecTV subscribers who paid DirecTV's early cancellation fee. Plaintiffs' Complaint asserts the following claims against Defendant: (1) Defendant violated ODTPA by failing to disclose to Plaintiffs and class members the term commitment and early cancellation fee that they would be charged if they did not continue to subscribe during the term (*Id.* ¶¶ 34–41); (2) Defendant violated the CSPA by imposing an early cancellation fee unbeknownst to Plaintiffs and other consumers and by including other unconscionable provisions (*Id.* ¶¶ 42–48); (3) Declaratory relief regarding whether Defendant entered into enforceable agreements with Plaintiffs and some or all class members as to the term commitment, early cancellation fee, and self-help provision because Plaintiffs and class members did not sign or accept any agreement and because the terms and conditions of the Lease Addendum and Customer Agreement are unconscionable (*Id.* ¶¶ 49–51); (4) Defendant was unjustly enriched by imposing and collecting early cancellation fees from Plaintiffs and other class members (*Id.* ¶¶ 52–55); (5) Defendant breached the parties' contract (*Id.* ¶¶ 56–60); (6) Defendant's early cancellation fee is an unlawful liquidated damages provision and is a penalty for discontinuing service (*Id.* ¶¶ 61–64); and (7) Defendant's arbitration clause is unconscionable and legally unenforceable, and all issues related to the legality of the contract as well as arbitrability should be decided by the court (*Id.* ¶¶ 65–70).

Two Motions are now pending before the court. First, Defendant submitted to the court its Motion to Dismiss or Stay Proceedings Pending Arbitration and to Compel Arbitration, or in the Alternative, to Dismiss Plaintiffs' Claims for Declaratory Judgment and Breach of Contract. The parties' disagreement centers on Defendant's Customer Agreement, effective as of September 1, 2001, and subsequent updated Customer Agreements, effective as of October 1, 2004, May 1, 2006, and April 24, 2007, which Defendant contends require this suit to be handled in arbitration. (McCarthy Decl. Exs. A–D.)

Plaintiffs argue that the Motion should be denied because: (1) they never agreed to the Customer Agreement, which contains the arbitration clause, and therefore no viable contract exists; and (2) even if a valid contract exists between the parties, the arbitration clause is unenforceable under Ohio law because the clause is both substantively and procedurally unconscionable. (Pls.' Mem. in Opp'n to Def.'s Mot. at 1–2, ECF No. 25.) Defendant maintains that the relationship between DirecTV and each of its subscribers is governed by the Customer Agreement that is available on its website and also mailed to each subscriber with his or her first billing statement. (*Id.* ¶ 3.) This agreement explains the terms and conditions of subscribing to DirecTV services, describes the parties' rights and obligations, and contains an arbitration clause. (*Id.*)

Second, Plaintiffs submitted to the court the Motion to Appoint Interim Co–Lead Counsel. Plaintiffs and their counsel request that they be appointed Interim Lead Plaintiffs and Interim Co–Lead Counsel, respectively, for the potential class action. However, the parties agreed that the court will determine this Motion after the Motion to Compel Arbitration is decided. (Stipulation to Delay Pls.' Mot. Appoint Counsel, ECF No. 36.)

## II. MOTION TO DISMISS OR STAY PROCEEDINGS AND TO COMPEL ARBITRATION

Defendant requests that this court issue an order compelling Plaintiffs to submit

this case to arbitration and dismiss or stay the proceedings pending the arbitration. The Federal Arbitration Act ("FAA") provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may seek an order compelling arbitration from any district court "which, save for such agreement, would have jurisdiction under Title 28 ... of the subject matter of a suit arising out of the controversy between the parties...." 9 U.S.C. § 4.

Furthermore, the FAA states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall on application of one of the parties stay the trial of the action until such arbitration has been had** in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added). Therefore, if the court finds that some of Plaintiffs' claims are referable to arbitration under a written arbitration agreement, the court shall stay these proceedings pending arbitration. However, in some instances, a court may dismiss a case by request of one of the parties instead of staying the proceedings. If all the claims in the case are within the scope of the arbitration agreement and "there is 'nothing left for the district court to do but execute judgment,' dismissal [of the case] is appropriate." *Ewers v. Genuine Motor Cars, Inc.*, No. 1:07 CV 2799, 2008 WL 755268, at *7, 2008 LEXIS 21466, at *22 (N.D.Ohio Mar. 19, 2008) (quoting *Arnold v. Arnold*, 920 F.2d 1269 (6th Cir.1990)).

Federal law requires that courts "rigorously enforce agreements to arbitrate." *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (declaring a federal policy favoring arbitration) (internal citation omitted). Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Arnold v. Arnold*, 920 F.2d 1269, 1281 (6th Cir.1990). The Sixth Circuit applies a four-pronged test to determine whether to grant motions to dismiss or stay the proceedings and compel arbitration:

[F]irst, it must determine whether the parties agreed to arbitrate; **second,** it must determine the scope of that agreement; **third,** if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and **fourth,** if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000) (emphasis added). The court discusses each prong below in turn.

### A. Agreement to Arbitrate

*1. Validity of the Customer Agreement Containing the Arbitration Clause*

Plaintiffs argue that this court must determine the validity of the Customer Agreement as a contract before deciding the Motion to Compel Arbitration. (Pls.' Mem. in Opp'n at 1–2.) Plaintiffs further state that there was no "bargained for exchange" relating to the terms of the Customer Agreement, including the arbitration clause, because they never read or signed the agreement, and therefore it is

not a valid contract. (*Id.*) Defendant contends that Plaintiffs agreed to the terms and conditions contained in the Customer Agreement, including the arbitration clause, by continuing to accept Defendant's services after receiving the agreement. (Def.'s Mem. in Supp. Mot. Compel at 6.)

In deciding whether a valid arbitration agreement exists for a motion to compel arbitration, the U.S. Supreme Court held that federal courts may only consider arguments as to the enforceability of the arbitration provision and not the contract generally. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). *See also Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Kean–Argovitz Resorts*, 383 F.3d 512, 515 (6th Cir.2004) ("[O]nce the district court determines that a valid agreement to arbitrate exists, challenges to other distinct parts of the contract are to be resolved by the arbitrator.") (citing *Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. 1801). Accordingly, the enforceability of the Customer Agreement as a whole is for the arbitrator to decide. Only issues relating to the making and enforcement of the arbitration clause will be considered by this court.

In reference to the validity of the arbitration clause, Plaintiffs maintain that they are not bound to arbitrate because they never read or signed the Customer Agreement, which contains the arbitration clause, as it was "stuffed" with their billing statements, and it was in small type print. (Pls.' Mem. in Opp'n at 4–5.) The court, however, finds this argument not well-taken. Plaintiffs fail to cite any cases in support of their position that their failure to read the provision renders the clause unenforceable. Furthermore, the Ohio Court of Appeals recently found that a party could not avoid enforcement of an arbitration clause because the party failed to read the clause. *See Estate of Brewer v. Dowell & Jones, Inc.*, No. 80563, 2002 WL 1454069, 2002 Ohio App. LEXIS 3514 (Ohio Ct.App. July 3, 2002). The court in *Brewer* stated that, "[a] party entering a contract has a responsibility to learn the terms of the contract prior to agreeing to its terms. The law does not require that each aspect of a contract be explained orally to a party ..." *Id.* at ¶ 13. Plaintiffs do not dispute that Defendant mailed them the Customer Agreement or that they ever received it. (Def.'s Reply Mem. Pls.' Mem. in Opp'n at 2, ECF No. 30.) Therefore, Plaintiffs' failure to read the Customer Agreement, including the arbitration clause, does not render the clause invalid.

Moreover, Defendant contends that Plaintiffs' failure to sign the Customer Agreement containing the arbitration clause does not render the clause invalid because Plaintiffs accepted the agreement by continuing to accept Defendant's services. (Def.'s Reply Mem. at 3.) The Customer Agreement states in bolded, capitalized letters:

This document describes the terms and conditions of your receipt and payment of DirecTV service and is subject to arbitration (Section 9). If you do not accept these terms, please notify us immediately and we will cancel your service. If you instead decide to receive our service, it will mean that you accept these terms and they will be legally binding.

(McCarthy Decl. Ex. D.) This type of agreement is created under "accept or return" contract formation. (Def.'s Mem. Supp. Mot. Compel at 6.)

Defendant relies on *Higgs v. Automotive Warranty Corp. of America*, 134 Fed. Appx. 828, 831 (6th Cir.2005) in support of this argument that Plaintiffs entered into this contract when they continued to accept Defendant's services despite not sign-

ing the agreement. In *Higgs,* the Sixth Circuit found that a "meeting of the minds" existed in an "accept-or-return" contract containing an arbitration provision, and therefore a valid agreement to arbitrate existed. *Id.* The court stated that the "accept-or-return" agreement " 'relies on the proposition that a contract is formed not at the time of purchase or earlier but rather when the purchaser either rejects ... or assents by not doing so within a specified time, providing the purchaser with an opportunity to review the proposed terms.' " *Id.* (quoting *Register.Com, Inc. v. Verio, Inc.,* 356 F.3d 393, 431 n. 43 (2d Cir.2004)). *See also Liedtke v. Frank,* No. 1:05–CV–2990, 2006 WL 625730, at \*4–5 (N.D.Ohio Mar. 10, 2006) (continuing to accept services after given opportunity to cancel them without penalty if consumer did not agree with terms makes consumer bound by the agreement) (citing *Higgs,* 134 Fed.Appx. at 832).

In the instant case, by continuing to accept Defendant's services, Plaintiffs agreed to the terms and conditions provided in the Customer Agreement. As stated above, Plaintiffs do not dispute that they received the Customer Agreement while subscribing to Defendant's services. (Def.'s Reply Mem. at 2.) Defendant sent Plaintiffs the Customer Agreement with their first billing statement and also each time Defendant updated the agreement. (McCarthy Decl. ¶ 5–6.) The original Customer Agreement stated that the agreement may be updated and that subscribers would accept the updated terms by continuing to accept service. (*Id.* Ex. A, § 4.) Plaintiffs did not dispute the terms of the Customer Agreement or cancel Defendant's services after receiving a copy of the original Customer Agreement or any updated copy of the agreement. (*Id.* ¶ 5–

6.) Therefore, Plaintiffs agreed to the terms and conditions of the original Customer Agreement and subsequent updated agreements by continuing to accept Defendant's services. Because the 2007 Customer Agreement was still in effect when Plaintiffs canceled service in May 2008, the 2007 Customer Agreement governed the parties' relationship at that time. (Def.'s Mem. Supp. Mot. Compel at 7.)

Additionally, Plaintiff does not dispute that an arbitration clause exists within the 2007 Customer Agreement. (*Id.* at 2.) The 2007 Customer Agreement under the bolded, capitalized heading "Resolving Disputes" provides a similar arbitration provision as the original Customer Agreement:

> [Y]ou and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows: ... [I]f we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration ... **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL.**

(McCarthy Decl. Ex. D, § 9(b).) Therefore, this court finds that the parties agreed to arbitrate.

### 2. Enforceability of the Arbitration Clause

Plaintiffs also argue that the arbitration clause is unenforceable under Ohio law[1] because it is substantively and procedurally unconscionable. (Pls.' Mem. in Opp'n at 1.) Under 9 U.S.C. § 2, written agreements to arbitrate shall be enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." Furthermore, the U.S. Supreme Court in *Doctor's Assocs. v. Casarotto,* 517

---

1. The parties do not dispute that Ohio law governs the enforceability of the arbitration clause.

U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (internal quotation omitted), stated that "the text of § 2 declares that state law may be applied if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." The Court also provided that general contract defenses, such as unconscionability, could invalidate arbitration clauses without violating § 2. *Id. See also Taylor Bldg. Corp. of Am. v. Benfield,* 117 Ohio St.3d 352, 884 N.E.2d 12 (2008) (finding that unconscionability is a defense to enforcement of an arbitration agreement). Therefore, the arbitration clause contained within the Customer Agreement may be unenforceable if found to be unconscionable.

■ To demonstrate that an arbitration clause is unenforceable, the party asserting unconscionability must prove that the clause is both substantively and procedurally unconscionable under Ohio law. *Hayes v. Oakridge Home,* 122 Ohio St.3d 63, 908 N.E.2d 408 (2009). *See also Collins v. Click Camera & Video, Inc.,* 86 Ohio App.3d 826, 621 N.E.2d 1294, 1299 (1993); *Taylor Bldg. Corp. of Am. v. Benfield,* 884 N.E.2d at 20. Unconscionability consists of both an absence of meaningful choice for the party opposing enforceability of the agreement (procedural unconscionability) combined with contract terms that are unreasonably favorable to the other party (substantive unconscionability). *Hayes,* at ¶ 20.

### a. Procedural Unconscionability

To determine whether an arbitration clause is procedurally unconscionable, courts have considered factors such as whether: (1) the arbitration clause was presented on a "take-it-or-leave-it basis;" (2) a disparity in bargaining power exists between the parties; (3) the arbitration clause was hidden in small print within the document; and (4) one of the parties could unilaterally modify the agreement. *See, e.g., Eagle v. Fred Martin Motor Co.,* 157 Ohio App.3d 150, 809 N.E.2d 1161 (2004); *Schwartz v. Alltel Corp.,* No. 86810, 2006 WL 2243649, 2006 Ohio App. LEXIS 3280 (Ohio Ct.App. Jun. 29, 2006); *Hawkins v. O'Brien,* No. 22490, 2009 WL 50616, 2009 Ohio App. LEXIS 73 (Ohio Ct.App. Jan. 9, 2009).

### i. Take–It–or–Leave–It–Basis

First, Plaintiffs argue that the arbitration clause is procedurally unconscionable because it was provided to them on a "take-it-or-leave-it basis" within a standardized form and thus was an adhesionary clause. (Pls.' Mem. in Opp'n at 12.) Plaintiffs rely on *Schwartz,* 2006 WL 2243649, 2006 Ohio App. LEXIS 3280 and *Eagle,* 809 N.E.2d 1161 in support of this argument. (Pls.' Mem. in Opp'n at 12.) The court in *Eagle* and the court in *Schwartz* both found arbitration clauses contained within standardized "form" contracts procedurally unconscionable based on the circumstances in those respective cases. However, the *Eagle* court noted that "a pre-printed sales contract containing an arbitration clause that is a condition precedent to the final sale, *without more,* fails to demonstrate unconscionability of the clause." 809 N.E.2d at 1179. Furthermore, the Supreme Court of Ohio has provided that an adhesion contract is not "unconscionable per se." *Taylor,* 884 N.E.2d at 24. The court stated that "so-called 'form contracts' can provide advantages to consumers," such as reduced transaction costs and lower prices. *Id.*

■ In the present case, the arbitration clause was presented within Defendant's standard Customer Agreement, which provided that Plaintiffs could accept the agreement's terms, including the arbitration clause, by continuing to accept Defendant's services or cancel its services. (McCarthy Decl. Ex. D.) Plaintiffs argue

that "the nature of the adhesion contract is even more egregious because Plaintiffs never signed any contract with DirecTV containing the Arbitration Agreement." (Pls.' Mem. in Opp'n at 13.) However, as previously stated, the Customer Agreement, including the arbitration clause, need not be signed for Plaintiffs to be bound by it because they accepted its terms through continuing to accept Defendant's services. Therefore, Plaintiffs' argument is not well-taken.

■ Moreover, as Defendant contends, the adhesionary nature of the arbitration clause does not make it procedurally unconscionable because satellite television services are not a necessity and Defendant is not the only provider of those services.[2] *See Collins,* 621 N.E.2d at 1300 (finding in a service contract no procedural unconscionability where plaintiff could purchase services elsewhere if he did not want to accept the defendant's standard agreement and where the services were not a necessity). Furthermore, in *Eagle,* the Ninth Appellate District of the Court of Appeals of Ohio found an automobile dealer's standard sales contract unconscionable in part because purchasing a car is a necessity and therefore "transactions involving modern day necessities such as transportation deserve special scrutiny before an arbitration clause is enforced by the courts." 809 N.E.2d at 1175 (quoting *Battle v. Bill Swad Chevrolet, Inc.,* 140 Ohio App.3d 185, 746 N.E.2d 1167 (2000)). However, unlike the goods in *Eagle,* Defendant's satellite television services are not "modern day necessities." Therefore, although the arbitration clause was included within a standardized form, this fact alone does not demonstrate procedural unconscionability.

*ii. Disparity in Bargaining Power*

■ Next, Plaintiffs assert that the large disparity in bargaining power between the parties makes the arbitration clause procedurally unconscionable. (Pls.' Mem. in Opp'n at 12, citing *Schwartz,* 2006 WL 2243649, 2006 Ohio App. LEXIS 3280 and *Eagle,* 809 N.E.2d 1161.) However, as stated in *Hawkins,* 2009 WL 50616, at ¶ 24, 2009 Ohio App. LEXIS 73, at ¶ 24, "an unequal bargaining position is not, in and of itself, a sufficient reason in law or equity to hold that arbitration agreement unenforceable." *See also Taylor Bldg.,* 884 N.E.2d at 23. The court further stated that, "there must be some evidence that, in consequence of the imbalance, the party in the weaker position was defrauded or coerced into agreement to the arbitration clause." *Id.*

In the present case, an imbalance in bargaining power does exist. Defendant is the largest direct-to-home satellite television provider in the nation. (Compl. ¶ 5.) Plaintiffs are only two of the many consumers that subscribe to Defendant's services and who were provided with a take-it-or-leave it agreement. However, there is no evidence that Plaintiffs were defrauded or coerced into the agreement of the clause. Plaintiffs do not make that argument, and the evidence demonstrates that Plaintiffs were mailed the Customer Agreement containing the arbitration clause and provided the opportunity to cancel Defendant's services if they did not want to accept the terms of the arbitration clause and subscribe to a different satellite television service provider. (McCarthy Decl. Ex. D.)

Furthermore, Plaintiffs argue that their claim that there was a large disparity in bargaining power is further demonstrated

2. In reaching this conclusion, the court does not consider what the result would be if different services were involved.

by the fact that they were not represented by counsel at the time they first accepted Defendant's services. (Pls.' Mem. in Opp'n at 13.) However, the fact that they were not represented by counsel is not dispositive either. There is no indication from the parties that Defendant prevented them from seeking legal counsel or informed them that there was no time to do so. Therefore, the imbalance in bargaining power between the parties does not make the arbitration clause procedurally unconscionable.

### iii. Hidden in Small Print

Plaintiffs also argue that the arbitration clause is procedurally unconscionable because it was hidden in small print on the third page of the four-page Customer Agreement. (*Id.* at 12–13.) However, the arbitration clause was provided under the bolded, capitalized heading "Resolving Disputes," which stated in bolded, capitalized lettering that, "Arbitration means that you waive your right to a jury trial." (McCarthy Decl. Ex. D, § 9.) Furthermore, this arbitration clause is more prominent than arbitration clauses found in other cases. *E.g., Schwartz,* 2006 WL 2243649, at ¶ 34, 2006 Ohio App. LEXIS 3280, at ¶ 34 (finding procedural unconscionability where clause was placed inconspicuously at the bottom of the back side of the agreement); *Eagle,* 809 N.E.2d at 1177 (finding procedural unconscionability where plaintiff was rushed into signing agreement and arbitration clause did not have conspicuous heading); *cf. Hawkins,* 2009 WL 50616, at ¶¶ 6, 22–23, 2009 Ohio App. LEXIS 73, at ¶¶ 6, 22–23 (finding no procedural unconscionability where clause and waiver of right to jury trial and to proceed through a class action were provided conspicuously on the back page of the agreement). Therefore, the court does not find the clause procedurally unconscionable on this basis.

### iv. Unilateral Modification

Lastly, Plaintiffs contend that Defendant's ability to unilaterally modify the terms and conditions of the Customer Agreement, including the terms provided in the arbitration clause, makes the arbitration clause procedurally unconscionable. (Pls.' Mem. in Opp'n at 13–14.) However, Plaintiffs cite no authority to support this position. In opposition to this argument, Defendant relies on *Englert v. Nutritional Sciences, LLC,* No. 07AP–989, 2008 WL 4416597, 2008 Ohio App. LEXIS 4290 (Sept. 30, 2008). In *Englert,* the appellate court held that a provision reserving the right to unilaterally modify an agreement was valid. *Id.* at ¶ 19. The court noted that the dispositive factors in finding a unilateral reservation of rights provision valid are "unambiguous language, notice to the other party that the terms of the contract could be changed ... and acceptance by that party of the risk involved" by agreeing to the provision. *Id.*

In the present case, the language of the provision allowing Defendant unilateral modification of the Customer Agreement under the capitalized, bolded heading, "Changes in Contract Terms" is unambiguous and provides notice that the terms of the agreement may be modified: "[W]e ... reserve the right to change ... the terms on which we offer Service ... You always have the right to cancel your Service, in whole or in part at any time, and you may do so if you do not accept any such changed terms or changes in programming." (McCarthy Decl. Ex. A, § 4.) Additionally, this provision provides Plaintiffs with the opportunity to cancel Defendant's services if they dispute the modified terms. *Id.* Plaintiffs continued to accept Defendant's services after receiving the original and updated Customer Agreements containing this provision (*Id.* ¶ 6) and thereby agreed to this provi-

sion and the updated terms of each Customer Agreement, including the arbitration clause. Accordingly, Defendant's ability to unilaterally modify the terms of the Customer Agreement, including the arbitration clause, does not make the arbitration clause procedurally unconscionable.

Therefore, based on the above findings, this court holds that the arbitration clause is not procedurally unconscionable.

### b. Substantive Unconscionability

Although the court has not found the arbitration clause to be procedurally unconscionable, it will now address whether the clause is substantively unconscionable. To make this determination, a court must consider the terms of the clause and whether they are commercially reasonable. *Hayes,* at ¶ 33. Because the Supreme Court of Ohio has not adopted a "bright-line set of factors" to determine substantive unconscionability, "factors to be considered vary with the content of the agreement at issue." *Id.*

First, Plaintiffs assert that the arbitration clause is substantively unconscionable because it contains a class action waiver, which would frustrate the remedial purposes of the CSPA if enforced because they have brought part of their action under this statute. (Pls.' Mem. in Opp'n at 8.) Plaintiffs argue that they would be unable to vindicate their substantive rights to proceed as private attorney general or through class action provided under the CSPA if compelled to arbitrate their claims. (*Id.*) The CSPA is "a remedial statute designed to compensate for traditional consumer remedies." *Eagle,* 809 N.E.2d at 1169. Under the CSPA, a consumer may bring an action to rescind an agreement or recover his or her damages for the CSPA violation. Ohio Rev.Code Ann. § 1345.09(A) (LexisNexis 2009). Moreover, some of the rights that the CSPA bestows under Ohio Rev.Code Ann.

Chapter 1345 are: providing the attorney general with the power to make available Ohio court opinions that determine which practices violate the CSPA and to inform consumers and suppliers of these violating practices, allowing consumers to proceed as private attorney generals or through class actions, and providing courts the power to award reasonable attorney's fees if the defendant is considered to have knowingly violated the CSPA.

However, the CSPA does not specifically preclude arbitration clauses in consumer sales contracts. *See Vincent v. Neyer,* 139 Ohio App.3d 848, 745 N.E.2d 1127, 1130 (2000). Additionally, Ohio courts have determined that arbitrating a claim under the CSPA does not deprive a plaintiff of any CSPA remedies. *See Smith v. Ohio State Home Servs., Inc.,* C.A. NOS. 16441, 16445, 1994 WL 200801, at *2, 1994 Ohio App. LEXIS 2270, at *5 (Ohio Ct.App. May 25, 1994) (finding no prohibition on arbitration proceedings from awarding CSPA remedies); *Karamol v. Continental Estates, Inc.,* No. WD–00–021, 2000 WL 1363195, at *2, 2000 Ohio App. LEXIS 4264, at *4–5 (Ohio Ct.App. Sept. 22, 2000) ("ordering a dispute arising from a contract containing an arbitration clause to arbitration does not deprive the complainant of any remedies available ... pursuant to the CSPA."). Furthermore, the Supreme Court of Ohio has yet to rule on the effect of class action waivers in arbitration clauses. Therefore, because the Supreme Court of Ohio has not addressed this issue, this court may use "the decisional law of the state's lower courts [and] other federal courts construing state law" to determine how the Ohio Supreme Court would rule on this issue. *Meridian Mut. Ins. Co. v. Kellman,* 197 F.3d 1178, 1181 (6th Cir. 1999). *See also Welsh v. Wachovia Corp.,* 191 Fed.Appx. 345, 355 (6th Cir.2006).

Plaintiffs rely on *Schwartz* and *Eagle* in support of their position. (Pls.' Mem. in Opp'n at 8.) In *Schwartz*, 2006 WL 2243649, 2006 Ohio App. LEXIS 3280, a consumer brought an action against a cellular phone service provider for violations of the CSPA. The defendant sought to compel arbitration based on an arbitration clause contained in the parties' agreement. *Id.* at ¶ 10. The appellate court in that case held that the arbitration clause was substantively unconscionable because it contained a class action waiver, which contravened the public policy behind the CSPA by eliminating the party's right to class action procedures, and it prohibited the grant of attorney fees authorized by the CSPA. *Id.* at ¶ 30. Therefore, the combination of prohibiting the awarding of attorney's fees and eliminating plaintiff's right to proceed through a class action established a "quantum of substantive unconscionability" within the arbitration clause. *Id.*

Additionally, in *Eagle,* as stated previously, a consumer brought an action against an auto dealership, in part, for violations of the CSPA. In deciding whether to grant defendant's motion to compel arbitration in that case, the Eighth Appellate District Court of Appeals of Ohio found an arbitration clause substantively unconscionable because it contained a class action waiver and confidentiality provision, which hinder the remedial purposes of the CSPA, and it imposed undisclosed prohibitive costs to arbitrate claims. *Id.* at 1183. Specifically, the arbitration clause in *Eagle* provided that arbitration procedures would be conducted by the National Arbitration Forum ("NAF") under the Code of Procedure. 809 N.E.2d at 1172. Under the NAF Code of Procedure, all arbitration proceedings are confidential unless otherwise agreed upon by the parties, and any person who discloses confidential information without authorization is subject to sanctions. NAF Rule 4. Therefore, the

*Eagle* court found that if it were to enforce the arbitration clause, it would hinder the remedial function of the CSPA by restricting the attorney general's power to inform the public about acts and practices in violation of the CSPA. 809 N.E.2d at 1183.

Moreover, the court in *Eagle* stated that the inclusion of undisclosed prohibitive arbitration costs alone rendered the arbitration clause substantively unconscionable. *Id.* at 1177. Under the NAF Code of Procedure, the plaintiff conservatively estimated that she would likely incur between $4,200 and $6,000 in arbitration fees for arbitration proceedings and a written opinion. *Id.* at 1176. Based on this estimation, the appellate court found that these high arbitration costs would deter potential litigants from bringing a CSPA claim and thus hindered the remedial purpose of the CSPA. *Id.* at 1177.

Defendant argues that *Schwartz* and *Eagle* are distinguishable from the present case because the existence of the class action waiver alone did not render the arbitration clause in each of those cases substantively unconscionable. (Def.'s Mem. Supp. Mot. Compel at 14.) Defendant relies on *Hawkins,* 2009 WL 50616, 2009 Ohio App. LEXIS 73, in support of this argument. (Def.'s Reply Mem. at 10.) In *Hawkins,* a consumer brought an action against a "payday lender" and its attorney, in part, for violations of the CSPA. The defendants sought to enforce the parties' arbitration agreement that contained a class action waiver. *Hawkins,* 2009 WL 50616, at ¶ 6, 2009 Ohio App. LEXIS 73, at ¶ 6. In opposing enforcement of the arbitration agreement, the plaintiff argued that the arbitration clause was unconscionable while relying on the *Eagle* court's reasoning. *Id.* at ¶ 29.

However, the appellate court noted that unlike the arbitration clause in *Hawkins,* the arbitration clause in *Eagle* contained a

confidentiality clause that hindered the public's access to information involving violations of the CSPA, which is one of the purposes of the CSPA. *Id.* at ¶ 33. The court stated that "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the (remedial) statute serves its functions." *Id.* at ¶ 32 (quoting *Green Tree Financial Corp.–Alabama v. Randolph,* 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). Furthermore, the appellate court in *Hawkins* found that "the private attorney general and class action provisions of [the CSPA] are procedural mechanisms that aid consumers in their prosecution of CSPA violations. They confer no additional substantive rights." 2009 WL 50616, at ¶ 34, 2009 Ohio App. LEXIS 73, at ¶ 34. In finding that the arbitration clause did not hinder any of the plaintiff's statutory substantive rights and remedies, the appellate court enforced the arbitration clause. *Id. See also Howard v. Wells Fargo Minn.,* No. 1:06–CV–2821, 2007 WL 2778664, 2007 U.S. Dist. LEXIS 70099 (N.D.Ohio Sept. 21, 2007) (finding arbitration clause containing class action waiver enforceable because plaintiff is able to vindicate her statutory rights in arbitration and is "only limited to the forum in which she may establish her right to relief"); *Price v. Taylor,* 575 F.Supp.2d 845 (N.D.Ohio 2008) (finding no substantive unconscionability in arbitration clause containing class action waiver because "an agreement does not violate a plaintiff's rights merely because it precludes a limited number of remedies").

■ In the present case, the arbitration clause included within the Customer Agreement states:

> Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a repre-

sentative member of a class or in a private attorney general capacity.

(McCarthy Decl. Ex. D, § 9(c).) Although this arbitration clause contains a class action waiver, it does not contain a confidentiality provision or prohibitive costs under NAF, as were contained in the arbitration clause in *Eagle,* or a prohibition against awarding attorney's fees, which are fees statutorily authorized by the CSPA, like the arbitration clause in *Schwartz.* Moreover, none of these cases find, and the court fails to find any cases that stand for the proposition that a class action waiver alone establishes substantive unconscionability in an arbitration clause. At most, Plaintiffs will have to pay a $125 filing fee (*Id.* Ex. D, § 9(b)), which Defendant has already offered to pay (Pls.' Mem. in Opp'n, Deanna D. Dailey Decl. Ex. A, ECF No. 26). Furthermore, Plaintiffs have not demonstrated what CSPA remedies, if any, would be unavailable in arbitration under the arbitration clause. As stated previously, class actions are procedural mechanisms that aid plaintiffs in vindicating their rights. Plaintiffs have not proven that their substantive rights will be hindered by bringing their claims to arbitration individually. Therefore, the class action waiver contained within the arbitration clause does not render the clause substantively unconscionable.

■ Next, Plaintiffs argue that the arbitration clause is substantively unconscionable because of the "blow-up" provision contained within the arbitration clause. (Pls.' Mem. in Opp'n at 9.) The provision that the Plaintiffs are referring to states that, "if . . . the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable." (McCarthy Decl. Ex. D, § 9(c).) Plaintiffs assert that the arbitration clause is substantively unconscionable because

what may be inferred from this provision is that "the entire purpose of the Arbitration Agreement is not to further the policy of private resolution of a dispute—as Defendant suggests in its Motion—but to ensure that private litigants cannot use the class mechanism." (Pls.' Mem. in Opp'n at 9.) Plaintiffs also state that by including the "blow-up" provision, "Defendant's purpose for the Arbitration Agreement is clear—to ensure that no private litigant could maintain a class action against Defendant in any forum." (*Id.* at 10–11.) However, Plaintiffs do not cite any cases to support this position. Furthermore, this court fails to find any Ohio case law that references a "blow-up" provision or non-severability clause as evidence of substantive unconscionability. Therefore, Plaintiffs' argument that the "blow-up" provision demonstrates that the arbitration clause is substantively unconscionable is not well-taken.

Lastly, Plaintiffs argue that the arbitration clause is substantively unconscionable because the potential costs of arbitrating their claims would be disproportionate to the amount they could potentially recover. (*Id.* at 2.) They state that the $125 cost of arbitration is almost half of their potential recovery of the early cancellation fee of $280, which would "dissuade wronged consumers from ever pursuing their claims." (*Id.* at 11.) In support of this argument, Plaintiffs rely on *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646 (6th Cir.2003). *Morrison* states that, "potential litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum." 317 F.3d at 663. However, *Morrison* also provides the Sixth Circuit test in determining whether arbitration costs would unconscionably deter plaintiffs from bringing their claims, which

is "whether the overall cost of arbitration from the perspective of the potential litigant is greater than the cost of litigation in court." *Id.* at 664.

In the present case, the maximum cost of arbitration for Plaintiffs is a $125 filling fee. (McCarthy Decl. Ex. D, § 9(b).) Defendant agrees to pay the other costs of arbitration. *Id.* Although this cost is almost half of Plaintiffs' potential recovery of the early cancellation fee of $280, the cost of beginning litigation in the U.S. District Court Northern District of Ohio is $350. United States District Court Northern District of Ohio, http://www.ohnd.uscourts.gov/Clerk_s_Office/Fee_Schedule/fee_schedule.html (last visited June 15, 2009). Accordingly, Plaintiffs have not demonstrated that the cost of arbitrating is greater than the cost of litigating in court. The cost of arbitration would not unconscionably deter potential litigants from bringing their claims.

Based on the above findings, this court holds that the arbitration clause is not unreasonably favorable to Defendant and therefore is not substantively unconscionable.

## B. Scope of the Arbitration Clause

Next, the court must decide whether Plaintiffs' claims are within the scope of the arbitration clause. *See Stout,* 228 F.3d at 714. The arbitration clause contained within the 2007 Customer Agreement provides that, "any legal or equitable claims relating to this Agreement, any addendum, or your Service" will be resolved by binding arbitration if the parties cannot resolve the claim informally. (McCarthy Decl. Ex. D § 9(b).) Because the Customer Agreement here provides for the arbitration of *any* dispute, it is broad in scope.

Recently, the Sixth Circuit, in *Solvay Pharms. v. Duramed Pharms., Inc.,* 442

F.3d 471, 482 (6th Cir.2006) (internal quotation marks and citation omitted), held:

When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration.... Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.

*See also Simon v. Pfizer, Inc.*, 398 F.3d 765, 773 n. 12 (6th Cir.2005) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.... If the matter at issue can be construed as within the scope of the arbitration agreement, it should be so construed unless the matter is expressly exempted from arbitration by the contract terms.") (citations omitted).

■■■ In the present case, the parties do not dispute that the arbitration clause encompasses all of Plaintiffs' claims. Because the arbitration clause is broad in scope and there are no doubts concerning the scope, Plaintiffs' claims are within the scope of the arbitration clause.

### C. Arbitrability of Federal Statutory Claims

The third prong in determining whether to grant motions to compel arbitration involves determining "if federal statutory claims are asserted" and if so, then the court "must consider whether Congress intended those claims to be non-arbitrable." *Stout*, 228 F.3d at 714. Plaintiffs do not assert any federal statutory claims. Therefore, this prong in determining a motion to compel arbitration does not apply to the present case.

### D. Stay

The final prong is whether to stay the remainder of the proceedings pending arbitration. *Stout*, 228 F.3d at 714. The Federal Arbitration Act requires that a court, upon being satisfied that the issues involved in the suit are referable to arbitration, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...." 9 U.S.C. § 3. *See also ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091, 1094–1095 (6th Cir.2002). This court has determined that all of Plaintiffs' claims against Defendant are referable to binding arbitration. Therefore, because "there is 'nothing left for the district court to do but execute judgment,' dismissal [of the case] is appropriate." *Ewers v. Genuine Motor Cars, Inc.*, No. 1:07 CV 2799, 2008 WL 755268, at *7, 2008 LEXIS 21466, at *22 (N.D.Ohio Mar. 19, 2008) (quoting *Arnold v. Arnold*, 920 F.2d 1269 (6th Cir.1990)). Accordingly, this court shall dismiss the above-mentioned claims pursuant to Fed. R.Civ.P. 12(b)(1).

### III. MOTION TO APPOINT INTERIM CO–LEAD COUNSEL

Because the court grants Defendant's Motion to Stay Proceedings Pending Arbitration and to compel Arbitration, this case is no longer before the court. *See Jefferson Pilot Sec. Corp. v. Blankenship*, 257 F.Supp.2d 962, 965 (N.D.Ohio 2003) ("Once a court determines that a valid agreement to arbitrate exists, all other issues concerning the dispute must be reserved for the arbitration forum."). Furthermore, all of Plaintiffs' claims will be decided by binding arbitration, which nullifies Plaintiffs' right to proceed through class action, therefore rendering the issue of appointment of Interim Co–Lead Counsel as moot. Accordingly, the court denies Plaintiffs' Motion to Appoint Interim Co–Lead Counsel.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or Stay Proceedings Pending Arbitration and to Compel Arbitration, or, in the Alternative, to Dismiss Plaintiffs' Claims for Declaratory Judgment and Breach of Contract Pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 17) is granted in part and denied in part as follows: the court grants Defendant's Motion to Dismiss Proceedings and to Compel Arbitration pursuant to Federal Rule of Civil Procedure 12(b)(1) and denies Defendant's Motion in the Alternative to Dismiss Plaintiffs' Claims for Declaratory Judgment and Breach of Contract pursuant to Federal Rule of Civil Procedure 12(b)(6) because these claims are subject to arbitration.  The court also denies Plaintiffs' Motion to Appoint Interim Co–Lead Counsel (ECF No. 28) as moot.

IT IS SO ORDERED.